319 S.E.2d 403

**Casto J. CRISS, et al.**

v.

**SALVATION ARMY RESIDENCES and Hon. Fred L. Fox.**

**No. 16137.**

Supreme Court of Appeals of West Virginia.

July 13, 1984.

---

636

Keith H. Gordon and Mary A. Kenney, North Central Legal Aid Society, Fairmont, for petitioners.

Elizabeth H. Rose, Rose, Southern & Padden, Fairmont, for respondents.

NEELY, Justice:

This is an original proceeding in prohibition in which the petitioners sought, when their petition was filed, to prohibit a trial from being conducted in an eviction action brought against them in the Circuit Court of Marion County. For the reasons set forth below, the writ of prohibition prayed for is awarded as moulded.

The petitioners are residents of William Booth Towers, a federally subsidized low-income housing project owned by Salvation Army Residences, Inc. When they moved into their apartment at Booth Towers the petitioners entered into a rental agreement. The lease was for a period of one year, effective 1 July 1983 to 1 July 1984. On 8 December 1983 the resident manager of the housing project filed a petition against the petitioners pursuant to *W.Va.Code* 55–3A–1 *et seq.* [1983][1] for summary relief for wrongful occupation of residential rental property. It was alleged in the petition that the petitioners had been in material noncompliance with the lease agreement by failing to allow an inspection of their apartment, by interfering with the housing project's management, and by creating a disturbance in the parking lot of the apartments.[2]

On 15 December 1983 the petitioners filed a notice of removal seeking to remove the case to circuit court and the following day filed notice of a bona fide defense. Upon receipt of these documents the circuit court scheduled a trial for 20 December 1983. On 19 December 1983 the petitioners answered denying the allegations in the complaint and raising defenses of retaliation[3] and violation of the termination pro-

1. *W.Va.Code,* 55–3A–1 *et seq.* [1983] is entitled "Remedies for Wrongful Occupational of Residential Rental Property." Under this statute, once a petition for wrongful occupation is filed with the court, the court must set a hearing date which "shall not be less than five nor more than ten judicial days" after request for a hearing is made, prior to the filing of the petition. If no answer is filed by the tenant, the court enters an order granting possession of the property to the petitioner. If the tenant raises a defense to the petition a hearing is held.

2. The resident manager of Booth Towers, Captain Sarah Ballentine, originally filed a petition

against Mr. and Mrs. Criss on 19 September 1983. Prior to the filing, Captain Ballentine prepared a notice of termination of tenancy as required by the petitioners' lease and 24 C.F.R. § 450.4 (1983). She did not mail that notice, however, because it was her understanding that the filing of the petition precluded the mailing requirement. The case was subsequently dismissed in the magistrate court without prejudice on the ground of insufficient notice.

3. Retaliation or retaliatory eviction is defined as: the "[a]ct of [a] landlord in commencing eviction proceedings against tenant because of tenant's complaints, participation in tenant's un-

cedures required by federal law. Petitioners also filed a counterclaim for damages suffered as a result of the landlord's retaliatory conduct and demanded a jury trial. In addition, the petitioners filed interrogatories, a request to produce documents and a motion for continuance.

The circuit court denied the continuance and set a trial date for 22 December 1983, the date on which a jury panel was to be available for another trial. However, when the original jury trial was continued, the court on its own motion, changed the trial date of this case to 17 January 1984. On 28 December 1983 the circuit court sent a letter to counsel for both parties and *sua sponte* reversed its earlier decision and denied the petitioners' request for a jury trial, dismissed their counterclaim and ruled that the parties could not engage in discovery in an action brought under *W.Va.Code* 55–3A–1 *et seq.* [1983].[4] The court rescheduled the case for 13 January 1984.

On 10 January 1984, Mr. and Mrs. Criss filed a petition for a writ of prohibition in this Court seeking to prohibit the trial of their case. Two days later the petitioners moved for a continuance in the circuit court on the ground that this Court had not yet acted upon their petition. The circuit court denied their motion and trial of the matter began on 13 January 1984 as scheduled. The case was heard by the court without a jury and at the conclusion of the trial the court took the matter under advisement. On 1 February 1984 we issued a rule in prohibition.

The questions before us are: (1) Whether petitioners are entitled to a jury trial; (2) whether they are entitled to file a counterclaim and obtain discovery; (3) whether the summary eviction proceedings established by *W.Va.Code* 55–3A–1 *et seq.* [1983] deprive the petitioners of their right to due process; and, (4) whether the same proceedings deny petitioners a lawful right to raise the defense of retaliatory eviction. We find for the petitioners on the first two issues and against them on the third and fourth issues.

I

The Seventh Amendment to the *Constitution of the United States* preserves the right to trial by jury, "[i]n Suits at common law," where the value of the controversy exceeds twenty dollars. *W.Va.Const.* art. III, § 13 affords the same right: "In suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved; ...."

The Supreme Court of the United States has addressed the issue of the right to a jury trial in summary eviction proceedings similar to those in the case before us. In *Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974) a District of Columbia summary eviction statute was involved. At the outset the Court held that the critical element in determining whether one has the right to a jury trial in a civil action is whether the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than an action in equity.

The phrase 'suits at common law' includes not only suits 'which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contra-distinction to those

---

ion, or like activities with which the landlord is not in agreement." Black's Law Dictionary 1183 (5th ed. 1979).

In the case before us, the petitioners' defense of retaliation emanates from the circumstances surrounding Mr. Criss' role as president of the Booth Towers Tenant's Association. In his petition to this Court, Mr. Criss states that individually and in his official capacity he made complaints and voiced grievances on behalf of himself and the other tenants. He voiced these complaints to Salvation Army officials, to officials from the U.S. Department of Housing and Urban Development (HUD), and to the local news media. The petitioners assert that the landlord's attempt to evict them is in retaliation for Mr. Criss' actions.

**4.** The circuit court's letter stated in material part:

"A close reading of *West Virginia Code* 55–3A–1, et seq, along with my understanding of the legislative history behind same, lead (sic) me to the conclusion that this legislation does not contemplate jury trials, counterclaims or discovery."

where equitable rights alone were recognized, and equitable remedies were administered .... In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights.' *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830) (emphasis in original).

The Supreme Court stated that summary eviction proceedings though different in detail from the common law action of ejectment, which was an action at law not in equity, serve the same essential function— to permit a plaintiff to evict one who is wrongfully detaining possession and to regain possession himself. The Court noted that in the various common law actions for ejectment or recovery of real property, questions of fact were resolved by a jury [5] and either party involved in the action could demand a jury trial. The Court concluded that because the right to recover possession of real property was a right ascertained and protected by courts at common law, the right is also protected by the Seventh Amendment. The Supreme Court held that the amendment applies to summary eviction statutes, the modern descendants of ejectment, and accords to either party in a proceeding under such statutes the right to trial by jury.

■ Guided by the Supreme Court's decision and *W.Va. Const.* art. III, § 13, we hold that either party in an action brought under *W.Va.Code* 55–3A–1 *et seq.* [1983] may demand a jury trial.[6] In this regard there may be some concern that if all tenants assert their right to a jury trial

under this statute the purpose of the statute, i.e., to provide the landlord with a quick procedure to remove a hold-over tenant, 3A G. Thompson, *Real Property*, § 1370 (1981 Repl. Vol.), will be thwarted. We do not think this is likely; although we hold that there is a right to a jury trial under the expedited procedures, that right is not unlimited and in certain cases it would be fruitless to assert it. Certainly all of the rules that apply to summary judgments in other jury trial contests apply with equal force here.

■ In the average landlord-tenant dispute where the failure to pay rent is the ground for removal of a tenant there will be no substantial defenses asserted by the tenant. Once the failure to pay rent is established there will be no genuine issues of material fact and the court will have the power to grant summary judgment, correctly finding that the party is not entitled to a jury trial.[7] In other cases where the defendant does assert defenses pursuant to *W.Va.Code* 55–3A–2 [1983] a jury trial must be afforded. As the Supreme Court said in *Purnell, supra:*

> Some delay, of course, is inherent in any fair-minded system of justice. A landlord-tenant dispute, like any other lawsuit, cannot be resolved with due process of law unless both parties have had a fair opportunity to present their cases. Our courts were never intended to serve as rubber stamps for landlords seeking to evict their tenants, but rather to see that justice be done before a man is evicted from his home. 416 U.S. at 385, 95 S.Ct. at 1734, 40 L.Ed.2d at 214.

---

5. *See* F. Maitland, *The Forms of Action at Common Law*, 27–29, 39 (1936); 1 F. Pollock and F. Maitland, *The History of English Law*, 145–147 (Second Edition 1899). *See also* Note 2, *Marthens v. B & O Railroad*, 170 W.Va. 33, 289 S.E.2d 706, 712 (1982).

6. When an unlawful detainer action is brought pursuant to *W.Va.Code* 55–3–1 [1923] parties in the proceedings have the right to a jury trial. *See W.Va.Code* 55–3–3 [1923]; *Beverly Manor Associates v. West*, 172 W.Va. 567, 309 S.E.2d 66 (1983).

7. The petitioners in this case cannot argue that the granting of summary judgment against them

denies them their right to trial by jury. We have held otherwise. In Syllabus Point 7 of *Aetna Casualty and Surety Company v. Federal Insurance Company*, 148 W.Va. 160, 133 S.E.2d 770 (1963) we stated:

> The summary judgment procedure provided by Rule 56 of the West Virginia Rules of Civil Procedure does not infringe upon the constitutional right of a party to a trial by jury; it is not a substitute for a trial, or a trial either by a jury or by the court of an issue of fact, but is a determination that, as a matter of law, there is no issue of fact to be tried.

In the case *sub judice* the nonpayment of rent was not an issue below. The petitioners were alleged to have violated the terms of their lease by causing a disturbance in the parking lot of the apartment complex, by refusing to allow an inspection of their apartment and by interfering with the duties of the housing complex management. The pleadings before us indicate that the petitioners denied these allegations in their entirety. Therefore, genuine issues of fact exist and the petitioners are entitled to a jury trial.

## II

The petitioners contend that they are entitled to file a counterclaim and to obtain discovery against the respondent landlord. Whether such entitlements exist depends upon whether the Rules of Civil Procedure are applicable to *W. Va. Code* 55–3A–1 *et seq.* [1983].

 Effective 1 July 1960, the *West Virginia Rules of Civil Procedure* were promulgated to secure just, speedy and inexpensive determinations in every action. The Rules do not restrict either the original or general jurisdiction of circuit courts in this State but merely establish procedures for the orderly process of civil cases as anticipated by *W. Va. Const.* art. III, § 10. *Arlan's Dept. Store v. Conaty*, 162 W.Va. 893, 253 S.E.2d 522 (1979). That the Rules have the force and effect of a statute is unquestioned. *See Crusenberry v. Norfolk and Western Railway*, 155 W.Va. 155, 180 S.E.2d 219 (1971); *In re Mann*, 151 W.Va. 644, 154 S.E.2d 860 (1967); *Boggs v. Settle*, 150 W.Va. 330, 145 S.E.2d 446 (1965).

Rule 1, *W. Va. R. C.P.* deals with the scope of the Rules:

These rules govern the procedure in all trial courts of record in all actions, suits, or other judicial proceedings of a civil nature whether cognizable as cases at law or in equity, with the qualifications and exceptions stated in Rule 81....

Initially, we recognize that the summary proceedings in this case have none of the characteristics which limit the application of the Rules under Rule 81, *W. Va. R. C.P.* The statute itself, *W. Va. Code* 55–3A–1 *et seq.* does not address the issue. However, in *Cottrell v. Public Finance Corp.*, 163 W.Va. 310, 256 S.E.2d 575 (1979), we were faced with a similar situation. The issue in that case was whether the Rules of Civil Procedure apply to civil proceedings instituted under a statute allowing a consumer to petition a court to reduce a garnishment. *W. Va. Code* 46A–2–130(3) [1974]. The Court noted that, "[t]here are numerous statutorily created proceedings, and the Rules apply to most of them without limitation or qualification." 163 W.Va. at 314, 256 S.E.2d at 578.[8]

Having no directive to the contrary from the Legislature, and in view of the fact that Rule 81, *W. Va. R. C.P.* does not limit the applicability of the Rules in unlawful detainer actions, of which the case *sub judice* is merely an expedited version, we hold that the Rules of Civil Procedure do apply to proceedings brought under *W. Va. Code* 55–3A–1 *et seq.* [1983].[9] We are mindful, however, that the time limitations in the statute are inconsistent with time periods set forth in the Rules and to this extent, the summary statute governs. Therefore, although we hold that the petitioners have the right to file a counterclaim under Rule 13, *W. Va. R. C.P.* they must do so in accordance with the time limitations set forth in *W. Va. Code* 55–3A–1(b), (c) [1983]. Likewise, the petitioners have the right to obtain discovery against the respondents under R.C.P. 26 if they can do so in the ten days prescribed by the statute or, if they can show good cause for continuance, within the time allowed by the Court for such continuance. It should be remembered, however, that if a continuance is granted for purposes of discovery, *W. Va. Code* 55–3A–3(d) [1983] requires that the tenant pay any periodic rent becoming due during the period of such continuance.

---

**8.** *See* Rule 1, *W. Va. R. C.P.;* M. Lugar and L. Silverstein, *West Virginia Rules* (1960).

**9.** The Rules clearly do not apply, however, if the action is brought in magistrate court because it is not a court of record. In that case there is no right to discovery under Rule 13, *W. Va. R. C.P.*

## III

Petitioners argue that the time periods prescribed by the summary eviction statute are unreasonably short and deprive them of the fundamental standards of due process required for a fair trial. They assert that the statute is unconstitutional. We do not agree. In cases where the nonpayment of rent is the only issue in the proceeding we do not believe that the time allowed for trial preparation is unduly short. Even if there is an issue of fact regarding whether the rent was paid or whether the tenants had a defense to the nonpayment, the tenant has as much access to the relevant facts as his landlord.

In other cases like the one before us where the facts appear to be somewhat more complex, *W.Va.Code* 55–3A–3(d) [1983], as previously noted, specifically provides for a continuance:

Continuances of the hearing provided for in this section shall be for cause only and the judge or magistrate shall not grant a continuance to either party as a matter of right. If the continuance is granted upon request by a tenant, the tenant shall be required to pay into court any periodic rent becoming due during the period of such continuance.

This provision means that in cases like the one *sub judice* where the petitioners contend that they require more time for preparation, they will not be forced to trial if they can show cause that they need more time and they provide their rent payments in the interim. *See Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

## IV

Finally, the petitioners contend that *W.Va.Code* 55–3A–1 *et seq.* denies them an adequate remedy for the defense of retaliatory eviction. We do not agree. *W.Va. Code* 55–3A–3(g) [1983] specifically provides for the defense of retaliation: "Absent an issue of title, retaliation, or breach of warranty, and in the event of an appeal wherein the tenant prevails, if the term of the lease has expired the relief ordered by the appellate court shall be for monetary damages only and shall not restore the tenant to possession." There is nothing in the record in the case before us to indicate that the trial court intended to deny to petitioners their retaliatory eviction defense. Were the court to do so, it would be misreading the statute and be in error.

We must now consider whether the petitioners are entitled to the extraordinary remedy of prohibition. The criteria for granting prohibition relief was stated by this Court in Syllabus Point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979).

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

The petitioners in the case before us are not fully protected by the right to appeal because they could be evicted before the appeal is heard. In addition, because of our decision that the petitioners are entitled to a jury trial, there is not only a high probability, there is a certainty, that the trial will be reversed on appeal. Therefore, we are of the opinion that prohibition is the proper remedy in this case.

Because trial of this case was held after the petition was filed in this Court, the writ of prohibition prayed for by the petitioners is awarded but moulded to prohibit the respondent circuit judge from entering an order without complying with the guidelines set forth in this opinion.

Writ awarded as moulded.